## GEPPI *v.* STATE OF MARYLAND

[No. 61, September Term, 1973.]

*Decided November 8, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Gerard A. Meola,* with whom was *Charles F. Morgan* on the brief, for appellant.

*Millard S. Rubenstein, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal involves a proceeding in the Baltimore City Court by the State, pursuant to Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 297, to forfeit the sum of $360.00 removed from the person of the claimant, Anthony Salvatore Geppi, Sr., by the turnkey prior to taking Mr. Geppi to the cellblock at the Central District in Baltimore City subsequent to his arrest as a passenger in his cousin's automobile and his being charged with the unlawful possession of a concealed weapon and the possession of 31 packages of dilaudid, a controlled dangerous substance, taken from the pants pocket of Mr. Geppi at the time of his arrest.

The facts are not substantially in dispute. On October 23, 1970, at approximately 9:15 P.M., the claimant Anthony was riding in the front seat of an automobile owned by his cousin, Paul Geppi, and operated by Paul in Baltimore City on Centre Street when the automobile was stopped by Officers Williams and Nelson of the Baltimore Police Department for a traffic violation. The officers, upon approaching the automobile, observed the claimant "stuffing things back into the glove compartment" and the claimant and the person seated behind him "having a commotion with their hands in concealed places under their pants, and so forth." They requested that the claimant and the person seated behind him leave the automobile and, upon their doing this, the officers saw a bulge in the claimant's front right coat pocket. For their safety, Officer Nelson patted the outer part of that pocket and felt what he thought was a handgun. He thereupon reached into the pocket and recovered a .22 caliber gas gun. The claimant was placed under arrest for possession of a concealed weapon. Upon further search of the claimant at the scene subsequent to his arrest, Officer Nelson recovered 31 packages (the claimant says 25 packages) containing dilaudid, a Schedule 1 Controlled Dangerous Substance, from the pants pocket of the claimant, and later recovered 20 similar packages from three separate locations inside the automobile. After the

claimant and his cousin Paul were transported by the police to the Central District, the turnkey, prior to placing the claimant in the cellblock there, took $360.00 from the claimant's person (and $24.00 from the person of Paul), a "total of $384.00, marked as evidence and held by Sgt. Trojan CO desk." The searches of the claimant at the scene of the arrest and later by the turnkey at the station house were conducted without a warrant or other judicial authorization.

The charges against the claimant arising out of this incident were stetted by the State on August 13, 1971, immediately after the claimant had been sentenced to a 15-year term of imprisonment in the Maryland Penitentiary in a different case for the possession of controlled dangerous substances with intent to distribute and for maintaining a nuisance house.

The State, on April 21, 1972, filed a petition to forfeit the $360.00 taken by the turnkey from the claimant, pursuant to Art. 27, § 297, alleging in paragraph six of the petition that the claimant "used and intended to use the coin and currency . . . while engaged in an unlawful violation of the Controlled Dangerous Substances Laws of the State of Maryland, by having possession of dilaudid, with the intention of manufacturing and distributing same, as proscribed by Code Article 27, §§ 286-302," which became forfeited to the State, to the use of the Police Commissioner of Baltimore City "by particular authority of § 297 (d) (1) of the aforementioned and ascertained Code Article 27." An order to show cause why the relief prayed in the State's forfeiture petition should not be granted was duly issued on April 27, 1972.

The claimant, on May 17, 1972, within the time allowed to show cause, filed an answer alleging that he was confined to the Maryland Penitentiary, serving his 15-year sentence; that the $360.00 which the State seeks to forfeit "is wholly unrelated to the conviction and sentence" the claimant is now serving; that the charges in regard to the small amount of dilaudid seized were stetted and never brought to trial; that the $360.00 seized comprised $10.00 of his own money and $350.00 he had borrowed from his brother Frank to pay

counsel which Anthony had retained in connection with another matter; that his wife is presently responsible for their nine children and is presently receiving assistance from the Department of Social Services; and that she urgently needs the $360.00 which the State seeks to forfeit.

On July 20, 1972, the claimant filed a formal request for a hearing in the forfeiture case. Later, on November 27, 1972, with leave of court, the claimant filed an amendment to his answer to the show cause order in which he alleged that the money sought to be forfeited was seized on October 23, 1970, and has been held for more than two years during which the claimant has not had a judicial hearing at which to defend against the seizure and that the delay denies the claimant due process of law in violation of the Fourteenth Amendment to the Federal Constitution.

The forfeiture case came on for hearing before Judge Carter in the Baltimore City Court on December 20, 1972. In addition to the above-stated facts, Anthony testified that he was an addict and at the time of his arrest the packages of dilaudid found in his pants pocket were for his personal use and would last him for only one or two days given the extent of his addiction. The entire 31 packets of dilaudid had an approximate street value of $3.00 a packet (one of the officers stated a street value of $6.00 a packet); but, if purchased in large amounts, one could get them cheaper. He would buy $25.00 worth if he had the money and get 25 packets which would last him for a day or two.

The lower court, at the conclusion of the testimony and argument, indicated that it would rule in favor of the State and forfeit the $360.00. It passed an order on December 27, 1972, that the $360.00 "having been found in close proximity to contraband controlled dangerous substances or controlled paraphernalia, which otherwise had been used or was intended to be used in connection with the illegal manufacture, distribution, dispensation or possession of controlled dangerous substances or controlled para- phernalia" was forfeited to the State to the use of the Police Commissioner to be used by him for purposes set

forth in Article 27 of the Maryland Code. A timely appeal was taken by the claimant from this order.

The claimant Anthony contends before us, on behalf of the appellant $360.00, that the lower court erred in four regards, *i.e.*, (1) in decreeing a forfeiture of the $360.00 because of the failure of the State to comply with Art. 27, § 297 (b) in instituting the forfeiture proceedings "promptly"; (2) in not finding that the excessive delay denied the appellant due process of law; (3) in not holding that there was insufficient evidence to justify a finding that the money was in close proximity to contraband controlled dangerous substances or controlled paraphernalia which otherwise had been used or was intended to be used in connection with illegal manufacture, distribution, dispensation or possession of such substances or paraphernalia; and, (4) in not holding that there was no evidence in regard to the illegal use of the money which would justify forfeiture inasmuch as close proximity of money to contraband cannot justify forfeiture without evidence of illegal usage.

We have concluded that the claimant is, under the facts of this case, correct in his first contention and, for this reason, we shall reverse the order of December 27, 1972, directing the forfeiture. Hence, we do not find it necessary to decide the claimant's remaining three contentions.

The relevant portions of Art. 27, § 297 in effect at the times involved in the present case are as follows:

"§ 297. Forfeitures and seizures generally.

"(a) *Property subject to forfeiture.* — The following shall be subject to forfeiture and no property right shall exist in them:"

\* \* \*

"(6) All money or currency which shall be found in close proximity to contraband controlled dangerous substances or controlled paraphernalia or which otherwise has been used or intended for use in connection with the illegal manufacture,

distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia.

"(b) *Seizure of property subject to forfeiture.* — Any property subject to forfeiture under this subheading may be seized upon process issued by any court having jurisdiction over the property except that seizure without such process may be made when —

"(1) The seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

"(2) The property subject to seizure has been the subject of a prior judgment in favor of the State in a criminal injunction or forfeiture proceeding under this subheading;

"(3) There is probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

"(4) There is probable cause to believe that the property has been used or intended to be used in violation of this subheading.

In the event of seizure pursuant to paragraphs (3) and (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly."

It must be first determined whether the $360.00 was seized under § 297 (b) (1) or under § 297 (b) (4), both *supra.* The State suggests that the seizure in this case — admittedly without a warrant or other judicial authorization — was made as an incident to Anthony's arrest at the automobile on October 23, 1970. The uncontradicted evidence indicates that the search of both the claimant's person and Paul's automobile was made and completed at the scene of the arrest, the gas gun and the packets of dilaudid in the automobile having been seized at that time. The $360.00 was not then seized. It was only after the search had been completed by the officers and when the claimant was being prepared to enter the cellblock at the Central District that

the turnkey found the $360.00 in the claimant's pants pocket and took possession of it. It may well be said that this action by the turnkey was not incident to the claimant's arrest and search by the officers. In any event, we are of the opinion that in this case the forfeiture proceeding was based on subparagraph (4), *i.e.*, that there was probable cause to believe that the property had been used or was intended to be used in violation of the Maryland Code (Art. 27, §§ 286-302), as indicated by the allegations of paragraph six of the forfeiture petition, already quoted. It is clear to us that, since the seizure was pursuant to subsection (4), the forfeiture proceeding, by the terms of § 297, *"shall* be instituted *promptly."* (Emphasis supplied.)

We then turn to a consideration of whether the forfeiture proceeding in the present case was instituted *promptly.* The claimant contends that, in determining this issue, the time elapsed from the original seizure of the property sought to be condemned and the date of trial should be the decisive period. In the present case this would amount to a delay of 2 years, 1 month and 27 days, that is, from October 23, 1970, to December 20, 1972. The State contends, on the other hand, that the time element to be considered — if at all — is from the time the criminal cases against the claimant were stetted on August 13, 1971, and April 21, 1972, the date the petition for forfeiture was filed — a period of 8 months and 8 days. In our opinion the time to be considered in this case is from the date of the stetting of the criminal cases to the date of filing the forfeiture petition; but, we are of the opinion that, under the facts of the instant case, the unexplained delay of 8 months and 8 days indicates that the forfeiture proceeding was not "instituted promptly."

We shall assume for the argument — but without deciding — that there was sufficient evidence to justify a finding by the lower court that the $360.00 was "found in close proximity" to the contraband or otherwise had been used or was intended for use in connection with the illegal manufacture, distribution, dispensation or possession of controlled dangerous substances or controlled paraphernalia — a required finding for forfeiture by Art. 27, § 297 (a) (6).

The sole question decided by us is that, under the facts of the present case, the unexplained delay of 8 months and 8 days cannot justify a finding that the forfeiture proceeding was instituted promptly as required by § 297 (b) and that the lower court was clearly in error in finding that it was.

In *Gatewood v. State*, 268 Md. 349, 301 A. 2d 498 (1973), we considered and sustained a forfeiture under § 297 by the State of $1,862.10 of coin and currency found in close proximity to controlled dangerous substances. In *Gatewood*, the accused was convicted on November 8, 1971. On April 18, 1972, Gatewood filed a petition seeking the return of the money and, approximately one week later, the State countered with a petition for forfeiture. In considering the question of impermissible delay, we used the period beginning with the expiration of the time for appeal of Gatewood's conviction (December 8, 1971) and ending in late April, 1972, when the petition for forfeiture was filed — a period of some 4 months. During this period, however, there were discussions in progress looking toward the establishment of a uniform procedure in forfeiture cases which accounted, in part, for the delay. Judge Singley, for the Court, stated:

> "As the court below pointed out, 30 days, within which an appeal could have been entered, followed the conviction on 8 November 1971. From December 1971 to April 1972, involved a delay of some four months. The State conceded that discussions looking toward the development of a uniform procedure in forfeiture cases occupied much of this time, and it was seemingly stirred into action by the filing of Gatewood's petition in mid-April. Whatever the reason, in the absence of a clear contrary expression of legislative intent, we cannot regard this as an impermissible delay."
> 268 Md. at 354, 301 A. 2d at 501.

It thus appears that in *Gatewood* there was a delay of approximately 4 months with a satisfactory explanation by the State for that delay; in the present case, the delay is twice as great — something over 8 months — and with *no*

*explanation* or *attempted justification* by the State for the delay. In our opinion, under these circumstances, it cannot be held that the forfeiture proceedings in the instant case were "instituted promptly" as mandated by § 297 (b). It is clear to us that the General Assembly, by using the word "promptly" without defining it further in the legislation, intended that the courts should give it effect in the light of the facts and circumstances in each case where there had been an important passage of time in the institution of forfeiture proceedings by the State. In this way, the State was not placed in the "straight jacket," as it were, of a designated time for filing the forfeiture petition; and, at the same time, the possible impairment of a claimant's right to due process of law by an unreasonable delay in the institution of forfeiture proceedings was avoided.

We do not by our holding in this case establish any particular time as unreasonable for the institution of forfeiture proceedings within the limits of § 297 (b). There may be cases in which a delay of 8 months or more in the institution of proceedings could be "reasonable" (and thus instituted "promptly") in the light of a proper explanation of such a delay; but the present case is not one of them since the 8 months' delay is unexplained by the State and no facts are present in the record which would possibly justify it.

The claimant contends that, even apart from the statutory requirement applicable in the instant case that the forfeiture proceeding be instituted promptly, the delay in this case would deny him due process of law. As we have indicated, we do not reach or decide this question or the other questions raised by the claimant.

> *Order of December 27, 1972, reversed and the case is remanded to the Baltimore City Court to pass an order directing that the $360.00 held by the appellee be delivered to the claimant, Anthony Salvatore Geppi, Sr.; the appellee to pay the costs.*