550 A.2d 433

**DIRECTOR, OFFICE OF FINANCE OF BALTIMORE COUNTY, Maryland**

v.

**Stephen Charles LAPENOTIERE.**

**No. 452, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Dec. 2, 1988.

Edward F. Seibert, Asst. County Atty. (Arnold Jablon, County Atty., on the brief), Towson, for appellant.

C. Larry Hofmeister, Jr. (Thomas F. McDonough and Royston, Mueller, McLean & Reid, on the brief), Towson, for appellee.

Argued before GILBERT, C.J., and WILNER and POLLITT, JJ.

WILNER, Judge.

We have before us an interplay between two provisions in Md.Ann.Code art. 27—§ 297(b) and § 641—that use the same term, "final disposition". The question is whether, in the context of this interplay, the definition of the term as used in § 641 governs the meaning of the term as used in § 297(b). We believe that it does, and so we shall affirm a judgment of the Circuit Court for Baltimore County, sitting *in banc.*

Section 297 provides for the seizure and forfeiture of certain property used in the violation of the controlled dangerous substance laws. Among the items or categories of property subject to seizure and forfeiture is "[a]ll money, coin, or currency which is found in close proximity to contraband controlled dangerous substances." § 297(a)(6).

The standards and procedures set forth in § 297 for the seizure and forfeiture of property differ somewhat depending on the kind of property involved and who seizes it. We deal here with money seized by a county police agency pursuant to § 297(a)(6), and so we shall advert only to the provisions dealing with that circumstance.

In addition to declaring money meeting the criteria of the subsection subject to forfeiture, § 297(a)(6) provides that:

"This money or currency shall be deemed to be contraband of law and all rights, title and interest in and to the money or currency shall immediately vest in and to ... the county in which it was seized if it was seized by a county ... law enforcement agency, ... and no such money or currency shall be returned to any person claiming it, or to any other person, except in the manner hereinafter provided...."

Section 297(b)(1) permits property subject to forfeiture to be seized either upon process issued by a court or without process when the seizure is incident to an arrest. Once money is seized in accordance with § 297(b)(1), its disposition is governed by subsections (b)(2), (b)(3), and (d).

Section 297(b)(2) allows the county treasurer (if the money was seized by the county police) to file an application for the forfeiture of the money in either the District Court or the appropriate Circuit Court. It requires, however, that "all proceedings relating to money or currency ... be instituted within 90 days *from the date of final disposition of criminal proceedings that arose out of Article 27, §§ 276 through 302, inclusive,*" those being the statutes proscribing the manufacture, distribution, and possession of controlled dangerous substances. (Emphasis added.)

Section 297(b)(3) then provides that:

"(i) If proceedings relating to money or currency are not instituted by the State or a political subdivision within the 90-day period, the money or currency seized under this section, upon petition by the defendant, shall be returned to the defendant.

(ii) If the defendant fails to petition for return of the money or currency *within 1 year from the date of final disposition of criminal proceedings*, the money or currency shall revert to the treasury as provided by subsection (d) of this section." [1]

(Emphasis added.)

As noted, subsection (b) imposes a time limit on both the county and the defendant, and both limits, according to the

---

1. Section 297(b)(3) was added to the law in 1983. *See* 1983 Md.Laws, ch. 437. The title to the Act seems more clear, in terms of the purpose of the provision, than the statute itself. It states the purpose of the Act as:

"providing that a defendant may petition for the return of forfeited money or currency *when the State or a political subdivision has failed to file a petition for forfeiture within a certain time;* providing that the defendant must file this petition within a certain time from the date of final disposition of the criminal proceeding; providing that unclaimed money or currency will revert to the proper State or political subdivision treasury; and generally relating to the forfeiture of money or currency."

(Emphasis added.) The Legislature apparently recognized a gap in the law. Section 297(a)(6), as noted, declares the money contraband and vests all right, title, and interest in it immediately in the county, but subsection (b)(2) requires the county to file its forfeiture action within 90 days after "final disposition" of the criminal proceeding. Prior to 1983, the law was silent as to what would happen to the money if the county failed to file a timely petition. Ch. 437 was evidently intended to fill in that gap by giving the defendant one year to petition for the return of the money, in default of which the provisions of subsection (a)(6) would control and the county could keep the money, notwithstanding its failure to file a timely petition for forfeiture.

Complicating this a bit is the fact that subsection (d) says absolutely nothing about reversion to anyone's treasury. With an exception not relevant here, subsection (d) states that, when property is forfeited "under this subheading," the county may:

"(1) Retain the property for official use (except, whenever coin, currency, or property is seized by the Baltimore City police, and forfeited under this subheading, it shall be surrendered to the City of Baltimore for disposition according to this section);

(2) Sell any forfeited property which is not required to be destroyed by law and which is not harmful to the public, provided that the proceeds be disposed of for payment of all proper expenses of the proceedings for forfeiture and sale including expenses of seizure, maintenance of custody, advertising and court costs; [or]

statute, commence from "the date of final disposition of criminal proceedings." In *Bozman v. Office of Fin., Balto. Co.*, 296 Md. 492, 463 A.2d 832 (1983), however, the Court added a judicial gloss to at least one of those provisions, stating, at 500, that "We see nothing in [the statute] that prohibits the Finance Director of the seizing jurisdiction from filing for forfeiture ... when no prosecution has been initiated or to bar the filing of such an application *earlier* than the conclusion of an initiated prosecution." (Emphasis in original.)

With this interpretation, it would appear that, where a criminal prosecution in fact is commenced, the county treasurer (or, as the Court allowed, the county finance director) may apply for the forfeiture of money seized by the police at any time up to 90 days after the "final disposition" of the criminal proceeding. Even if that official fails to do so, however, the county will still be able to retain the money if the defendant fails to file his petition for the return of the money within one year after "final disposition."

When a criminal case proceeds directly to a judgment of conviction or acquittal, the date of "final disposition" is ordinarily ascertainable without substantial difficulty, even if an appeal is taken. *See, for example, Baltimore County v. Jones*, 46 Md.App. 419, 417 A.2d 470, *cert. denied* 288 Md. 740 (1980). *See also Ewachiw v. Director of Finance*, 70 Md.App. 58, 519 A.2d 1327 (1987), involving a *nolle prosequi* of the criminal charges. When the criminal court, acting pursuant to art. 27, § 292 or § 641, stays the entry of judgment and places the defendant on probation, however, the matter becomes somewhat more complicated. Does the "final disposition" occur when the court directs that disposition or when the probation is subsequently terminated, through either the defendant's compliance or noncompliance with the conditions of the probation? This

---

(3) Require an appropriate agency to take custody of the property and remove it for disposition in accordance with law, or destruction."

appeal concerns a disposition under § 641; fortunately for us, the answer is easier in that instance than if the disposition were under § 292.

Stephen Lapenotiere was arrested on November 14, 1985 and charged pursuant to art. 27, § 287 with the unlawful possession of cocaine. As an incident to the arrest, Baltimore County police officers seized from Lapenotiere $3,321 in cash, which, presumably in accordance with procedures adopted pursuant to § 297(c), they deposited in the account of the county Director of Finance. On February 10, 1986, Lapenotiere appeared in the District Court and pled not guilty. Acting pursuant to art. 27, § 641, the court stayed the entry of judgment and placed Lapenotiere on unsupervised probation for 12 months.

In the belief that the entry of probation before judgment constituted the "final disposition" of the criminal proceedings, the Director of Finance filed an application for forfeiture of the money on May 6, 1986—within 90 days after entry of the February, 1986 order. Despite repeated attempts, however, the Director was unable to effect service of his petition on Lapenotiere; the last attempt at service was on February 2, 1987. On February 11—a year and a day after entry of the probation order—the Director decided to abandon the forfeiture proceeding. Apparently concluding that Lapenotiere, by failing to file his own petition for return of the money, had relinquished any right to it, the Director requested that the money be transferred to the county's general fund, presumably pursuant to § 297(b)(3)(ii); a week later, on February 19, 1987, the Director voluntarily dismissed his complaint for forfeiture, without prejudice. *See* Md.Rule 2–506.

Lapenotiere had a very different view than the Director of what constitutes a "final disposition" of a proceeding culminating in an order under § 641. On July 1, 1987, he filed a petition in the Circuit Court for the return of the money, contending that the "final disposition" of the District Court case occurred not on February 10, 1986, when the order was entered, but on February 10, 1987, when he

successfully completed his probation. The court initially rejected that approach and, by granting the Director's motion for summary judgment, concluded that "final disposition," for purposes of § 297, occurred in 1986, when the probation order was entered. An *in banc* panel of the court, however, acting on Lapenotiere's petition for review, disagreed. In a split decision handed down February 2, 1988, a majority of the three-judge panel found that the "final disposition" occurred in February, 1987 and that Lapenotiere's petition was therefore timely filed. It therefore reversed the judgment initially entered and ordered that the money be returned. The Director has appealed to us from that order.

Lapenotiere's position is straightforward. Section 641 itself provides the answer. Subsection (a), as indicated, allows the criminal court to "stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate." Subsection (b) provides that, "[u]pon violation of a term or condition of probation, the court may enter judgment *and proceed with disposition of the person as if the person had not been placed on probation.*" (Emphasis added.) Conversely, and decisively in Lapenotiere's view, subsection (c) provides that:

> "Upon fulfillment of the terms and conditions of probation, the court shall discharge the person from probation. *The discharge is final disposition of the matter.* Discharge of a person under this section shall be without judgment of conviction and is not a conviction for purposes of any disqualification or disability imposed by law because of conviction of crime."

(Emphasis added.)

Section 641(c) clearly defines "final disposition" of the proceeding as the discharge from, rather than the imposition of, the probation. As the "final disposition" of the District Court case was, in fact, under § 641, Lapenotiere can see no reason not to apply the same definition and construction to § 297.

Though recognizing that the critical language in the two statutes is identical, the Director asks that we depart from the normal requirement that statutes bearing on the same subject be construed harmoniously and, in effect, ignore the provisions of § 641(c). He points out that the purpose of inserting the various time requirements in § 297 was to assure that forfeitures are effected without undue delay (*see, for example, Baltimore County v. Jones, supra,* 46 Md.App. at 424, 417 A.2d 470, citing *Geppi v. State,* 270 Md. 239, 310 A.2d 768 (1973), and *Gatewood v. State,* 268 Md. 349, 301 A.2d 498 (1973)), and that regarding the termination of the probation, rather than its commencement, as the "final disposition" would run counter to that purpose.

As we indicated earlier, we think that Lapenotiere has the better argument.

In the current posture of the case, the issue hinges solely on the timeliness of Lapenotiere's petition. Under the holding in *Bozman v. Office of Fin., Balto. Co., supra,* 296 Md. 492, 463 A.2d 832, the Director's complaint for forfeiture would have been timely filed whether the "final disposition" occurred in 1986 or 1987. It was filed within 90 days after the February, 1986 order and, even if "final disposition" occurred in 1987, under *Bozman,* it could properly be filed *before* that disposition. But the Director deliberately and expressly dismissed his complaint, and so has relinquished any right to forfeiture under § 297(b)(2) or (b)(3)(ii). The funds, then, are in a state of limbo: if Lapenotiere's petition is timely, he gets the money; if it is not timely, the money reverts "to the treasury" notwithstanding the abandonment of the forfeiture action.

Section 297 does not define the term "final disposition"; it never has. Although attempts have been made in the past to make more clear when the time periods set forth in the statute commence, the Legislature, for whatever reason, has chosen to leave the law ambiguous. *See, for example,* HB 1233 (1981), SB 745 (1981), and HB 1391 (1984). Several times, but to no avail, it has been called to

the Legislature's attention that a counterpart statute providing for the forfeiture of money used in illegal gambling operations (Md.Ann.Code art. 27, § 264) specifically deals with this situation and starts the time for petitioning running when the probation order is entered.[2]

We have, then, a situation in which the Legislature (1) was aware that, in contrast to § 264, § 297 used an undefined term that, in the case of a disposition under § 641,

---

2. Although there are a number of differences between § 264 and § 297, they do follow a common pattern with respect to the seizure and forfeiture of money. Like § 297(a), § 264(a) declares money seized by the police to be contraband and vests immediate right, title, and interest in it in the county (or State). Unlike § 297, as construed in *Bozman, supra,* forfeiture must await an "ultimate disposition" of the underlying criminal prosecution. If the "ultimate disposition" of that prosecution is a conviction, the county has 90 days "from the date of the record of the entry of such conviction," assuming no appeal, to file a petition for forfeiture. § 264(c). Upon an "ultimate disposition" resulting in acquittal, dismissal, stet, nolle prosequi, "or probation under the provisions of § 641," a claimant may petition for return of the money "within one year after the date the judgment or order was entered or the action was taken which constituted the ultimate disposition." § 264(d). Section 264(e) defines "ultimate disposition" as including "acquittal, dismissal, guilty, probation prior to judgment, pleas of guilty and of nolo contendere, a stet, a nolle prosequi, and termination of the criminal proceedings pursuant to appeal."

In 1974, the Legislature, in one bill, added the 90–day requirement for the county's petition to *both* § 264(c) and § 297(b), and yet retained the different terminology— "ultimate" as opposed to "final" disposition. *See* 1974 Md.Laws, ch. 666. A major purpose of the ill-fated HB 1391 (1984) was to conform the terminology and eliminate the ambiguity in § 297. As pointed out in testimony of William R. Bailey, Associate County Attorney of Prince George's County, before the House Judiciary Committee:

"In the gambling forfeiture statute, 'ultimate disposition' is explicitly defined. In the drug forfeiture statute, however, the term 'final disposition' is used but nowhere defined. Controversies have arisen on several occasions as to what constitutes a final disposition, e.g. Does final disposition occur when a probation before judgment is imposed or when it expires? Does it occur at sentencing following conviction or at the point at which the right to appeal expires? Guesswork in this area should be eliminated by statute.

In H.B. 1391, 'final disposition' in the drug forfeiture statute has been changed to the 'ultimate disposition' used in the gambling law. The term is explicitly defined in the existing gambling law, but for simplicity's sake, is defined in context in the drug law."

was ambiguous and (2) was also presumably aware that the very same term was used *and defined* in § 641. This lends special emphasis to the general desirability of construing statutes harmoniously, especially when they deal with the same subject matter. The time requirements under § 297 are clearly related to the underlying criminal prosecution—indeed to the "final disposition" of that proceeding.

The Legislature has taken pains to define "final disposition" in the context of an order of probation before judgment—the one kind of disposition, aside from a stet, where the final disposition might be less than clear. To ignore that definition by holding that it does not apply to a statute that not only uses precisely the same term but is very much dependent on how the term is defined seems to us to make no sense. Accordingly, we conclude that, for purpose of § 297, a "final disposition" under § 641 occurs either upon the entry of judgment following the finding of a violation of probation, as provided in § 641(b), or, as in the case here, upon the discharge of the defendant from probation. That event occurred on or about February 10, 1987; Lapenotiere's petition was therefore timely, and he is entitled to the return of the money.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.